**UNITED STATES of America**
**v.**
**Ronnie K. PUGH, Appellant.**
**No. 23216.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 22, 1970.

Decided June 30, 1970.

---

Mr. Sigmund Timberg, Washington, D. C. (appointed by the court), for appellant.

Mr. Henry F. Greene, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., Thomas C. Green and John A. Terry, Asst. U. S. Attys., were on the brief for appellee.

Before FAHY, Senior Circuit Judge, and ROBINSON and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

Appellant was convicted of armed robbery, assault with a dangerous weapon, and carrying a dangerous weapon. Appellant's principal contention is that the trial judge erred in limiting appellant's cross-examination of a key government witness. Appellant also claims error in the denial of his motion to produce two additional witnesses and to give a missing witness charge. We conclude the appellant received a fair trial even if not a perfect trial, and therefore we affirm the convictions.

Shortly after midnight August 21, 1968, one Bynum was taken by a friend Pulliam in his cab to a rooming house in northwest Washington to visit an acquaintance known as "Bob". After approximately twenty minutes, as Bynum was leaving he was held up at the point of a pistol and robbed by two men just inside the entrance of the house. During the confrontation, a surprisingly leisurely affair lasting ten minutes, Pulliam was invited into the building by one of the robbers. At this moment an unidentified male standing at the top of the stairway yelled "What's going on down there?", and the robbers fled. Bynum and Pulliam instituted a search for the

robbers in the vicinity, and identified appellant about 8 blocks away. The two hailed a police patrol car, and appellant was taken into custody. Others in his company melted away at the approach of the police officer. Immediately prior to the arrest Bynum and Pulliam observed appellant discard a pistol, which was recovered later.

Appellant testified, denied all complicity in the robbery, and claimed a complete misidentification by the victim and his friend Pulliam. Both Bynum and Pulliam testified on direct examination that Bynum had gone to the rooming house because Bynum "wanted to see a fellow" who lived there, a friend known as "Bob". After an appropriate buildup, appellant's trial counsel on cross-examination demanded "Mr. Pulliam, it's a fact, is it not, that you really took him up there to see a girl?" The immediate objection by the Government was sustained on two grounds, that the question was irrelevant and that it was highly prejudicial.

■■ We think the trial court erred in thus cutting off appellant's right of cross-examination. Since the Government deemed it important enough to ask both Bynum and Pulliam about the purpose of the visit in the early morning hours, it did not become irrelevant and immaterial when appellant's counsel chose to cross-examine concerning the same subject. The purpose of his visit was material and relevant in setting the stage and giving the surrounding for the robbery which later occurred, and inquiry by the defense was legitimate for this objective. The fact that it was prejudicial to the character of the witness and to his credibility should not bar the question, if it related to matters brought out by the Government on direct examination.[1] A second legitimate objective of the question could have been to discover an additional witness to the robbery.

■ We do not say that the trial judge can never limit inquiry of defense counsel on matters brought out by the Government on direct examination. For example, if cross-examination of a witness has been extensive, repetitive and protracted, or if defense counsel has succeeded in bringing out several discreditable matters and further questions along this line would be merely cumulative, the trial judge might properly limit the scope of cross-examination without in any way harming defendant's case.[2] But under the circumstances here, where there was no protracted cross-examination, and where the question asked was not highly prejudicial to the witness, except as it bore upon the credibility of his previous testimony, defense counsel should not have been so limited.

The theory of the defense was one of mistaken identity, i. e., that the appellant was not at the scene of the robbery some 8 blocks away from where he was apprehended, that he knew nothing about any

1. In Alford v. United States, 282 U.S. 687, 691, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931) Justice Stone wrote "cross-examination of a witness is a matter of right." And further, "The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted. (citing cases). But no obligation is imposed upon the court, such as that suggested below, to protect a witness from being discredited on cross-examination, short of an attempted invasion of his constitutional protection from self-incrimination, properly invoked. There is a duty to protect him from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him. (citing cases). But no such case is presented here. The trial court cut off in limine all inquiry on a subject with respect to which the defense was entitled to a reasonable cross-examination. This was an abuse of discretion and prejudicial error." (at 694, 51 S.Ct. at 220).

Lindsey v. United States, 77 U.S.App. D.C. 1, 133 F 2d 368 (1942) is to the same effect.

2. Tinker v. United States, 135 U.S.App. D.C. 125, 128, 417 F.2d 542, 545. "Here the proffered evidentiary items could have legitimately added little to appellant's substantial presentation while their illegitimate propensities loomed large."

of the participants therein nor any of the persons resident at the house Bynum and Pulliam had visited. Therefore his trial strategy necessarily was one of exhaustive inquiry into every aspect of the story given by the Government witnesses, seeking to find some evidence of weakness into which the defense could probe further. According the defendant the presumption of innocence, the trial judge should have allowed the full development of this strategy, which was the only defense the appellant or any other defendant similarly situated could have.

Although appellant's trial counsel admitted he had no foundation in fact for the question (and under the situation of his client and his theory of defense could not have had), the question objected to here was not an improbable flight of fancy. Trial counsel in many cases cannot possibly have a foundation in fact for all questions, only a well reasoned suspicion that a circumstance might be true.[3] It was not utterly implausible here that Bynum had gone to this rooming house in the early hours of the morning for the purpose of seeing a girl friend rather than a male friend.

We do not mean to suggest that the reprehensible practice of some trial counsel in asking highly prejudicial questions of witnesses with the almost certain knowledge that the insinuations are false should be condoned. False insinuations in a question, even if followed by an indignant denial from the witness, undoubtedly leave a trace of prejudice in the jury's mind. But here the question was not of that character and should have been allowed.

In attempting to justify the trial court's curtailment of cross-examination, the Government seems to confuse the rule that a witness may not be impeached by extrinsic evidence (contradiction by another witness or evidence) on a collateral issue, with the permissible scope of cross-examination which is the question here.[4] The trial court does not have the same discretion in limiting cross-examination as in curtailing the impeachment of a witness on a collateral issue. Further, while he can restrict cross-examination—for reasons, among others, of relevancy, materiality or prejudice—on new matters first broached on cross, the trial judge may not restrict the right of cross-examination by the defense on a matter brought out before the jury on direct until that right has been "substantially and fairly exercised." [5] Only then trial judge committed error.

However, appellant did receive a fair trial, although not a perfect trial. should judicial discretion intervene. Here the barred question was one of a small number to a relevant and material

---

3. Alford v. United States, supra, n. 1, 692, 51 S.Ct. 219: "Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply. (citing cases). *It is the essence of a fair trial that reasonable latitude be given the cross-examiner*, even though he is unable to state to the court what facts a reasonable cross-examination might develop. * * *
   To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is *to deny a substantial right and withdraw one of the safeguards essential to a fair trial*." (citing cases). Emphasis in the above quotation

was supplied by Judge Stephens of this court in Lindsey v. United States, supra, n. 1.

4. On brief, the Government cites Ewing v. United States, 77 U.S.App.D.C. 14, 135 F.2d 633, cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1941); and, Cunningham v. United States, No. 21,505, D.C.Circ., decided Dec. 24, 1968 (unpublished opinion) in support of its interpretation of the trial judge's discretion in curtailing cross-examination when the questions propounded relate to collateral issues. But both of these cases deal with the exercise of the courts' discretion in allowing the Government to rebut collateral statements made on cross-examination through the introduction of extrinsic testimony.

5. Lindsey v. United States, supra, n. 1.

matter, a subject which had been developed by the Government on direct, and a cross-examination justified by more than one legitimate purpose. The conclusion is inescapable that the defendant's right of cross-examination was not "substantially and fairly exercised" on this point when it was cut off by the trial judge. Accordingly, we find that in so doing, the Not every error is prejudicial error calling for reversal.[6] Under the circumstances of this case we do not see that the cutting short of appellant's right of cross-examination could have been influential in the outcome and thus call for reversal. The identification of the appellant by the complaining witness Bynum was positive and certain. He had about ten minutes to see the two robbers at a distance of approximately five feet under the light of the hallway. His identification was supported by Pulliam, who admittedly had less chance to observe. Both men showed no hesitancy in hailing a police patrol car as soon as they were fortunate (some 10 to 20 minutes after the robbery) in spotting appellant Pugh among a small group on a nearby well-lighted street. Both Bynum and Pulliam saw the appellant dispose of a pistol in the bushes on the arrival of the police patrol car, this pistol matched the description of that used in the robbery, and the pistol was found by the police officer where the two witnesses said it had been thrown by appellant Pugh.

Appellant's trial counsel made no effort to locate Bynum's friend Bob, with whom Bynum had allegedly been visiting immediately prior to the robbery, until the close of all the evidence in the case. There is no reason to believe that even if the barred question had elicited an affirmative answer from Pulliam that the credibility of his and Bynum's testimony would have been shaken any more than it was. Although the question was left unanswered, the imputation of the question was before the jury with no instruction to disregard, and the jury may have very well suspected even before the question was asked that Bynum's visit to this rooming house in the wee small hours of the morning was to see a friend Jane rather than a friend Bob.

■■ The remaining contentions of appellant can be disposed of shortly. Appellant's trial counsel did not move during the time either side was presenting evidence for an order of production of the two possible witnesses who were alleged to have been in the house at the time Bynum was robbed, the friend known as "Bob" and the unknown man who shouted from the top of the stair. At the outset of the trial the Government presented the three witnesses on which it would rely, and it was not until after the close of the evidence on the second day that appellant's trial counsel made his motion. There was no evidence that the Government had any additional information with reference to the identity of "Bob" or the unidentified man on the second floor, nor control over them; therefore the motion for production of the two potential witnesses was both untimely and unjustified. It follows that since neither witness was within the control of the Government, the missing witness instruction was properly denied. The rule is that the missing witness instruction is proper where "a party has it peculiarly within his power to produce a witness

---

6. Howard v. United States, 128 U.S.App. D.C. 336, 341, 389 F.2d 287, 292 (1967). "Although opportunity to cross-examine is a fundamental right demanding great respect (citing cases), the courts have also recognized that regulation of the extent and scope of cross-examination must generally lie within the discretion of the trial court and a reversal is warranted only when an abuse of discretion leads to prejudice.", citing authorities. *See also* F.R. Crim.P. 52(a), and Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1966), where the Supreme Court, on referring to Federal and State harmless error statutes, said: "All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial."

whose testimony would elucidate the transaction."[7] This standard was not met here.

Judgment affirmed.

7.  Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893) ; Stewart v. United States, 135 U.S.App.D.C. 274, 418 F.2d 1110 (1969) ; Wynn v. United States, 130 U.S.App.D.C. 60, 397 F.2d 621 (1967).