**UNITED STATES of America**

v.

**Larry Edward FOWLER, Appellant.**

**No. 71-1330.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 7, 1972.

Decided July 6, 1972.

Mr. Richard W. Whitlock, Washington, D. C. (appointed by this court), for appellant.

Mrs. Ann S. DuRoss, Asst. U. S. Atty., with whom Messrs. Harold H. Titus, Jr., U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before McGOWAN, MacKINNON and ROBB, Circuit Judges.

MacKINNON, Circuit Judge:

At trial for a narcotics act violation it developed that the Government's principal witness, formerly employed as an undercover agent, had been dismissed from such employment and was no longer connected with the Police Department. Defense counsel knew from conversation with the former agent that shortly before his dismissal he had been given two urine tests by the Police Department to determine whether he was using narcotics. Apparently one of these tests was negative but the Police Department considered the second test to be inconclusive since they suspected that it indicated the presence of some evidence of narcotics. The witness was then requested to take a third urine test. He refused to do so. Shortly thereafter his services with the Police Department were terminated. The reason stated on the record of his dismissal was that he was allegedly "under weight."

At appellant's trial this former narcotics agent appeared as the Government's principal prosecution witness and testified to facts which, if believed by the jury, would justify a guilty verdict without any additional evidence. Under such circumstances we conclude that defense counsel had a right to cross examine the agent as to the true reasons for his dismissal, and as to whether he was using narcotics at the time he observed appellant commit the alleged offense. The obvious ground for such cross examination would be to determine the witness' credibility and his powers of observation at the time he observed the offense.

In Wilson v. United States, 232 U.S. 563, 34 S.Ct. 347, 58 L.Ed. 728 (1914), it was held to be improper to deny cross

examination of an admitted drug user to explore the possibility that his powers ot recollection had been affected when he observed the events he related in his testimony. The evidence here is very close to the facts in *Wilson*. While the witness did not admit to being a drug addict, he did admit that police authorities suspected one of his tests showed that he had been using narcotics. This fact alone was sufficient to justify cross examination as to his possible use of narcotics, and the right to so proceed is buttressed by the fact that almost immediately thereafter he had been dismissed from the service for allegedly being "under weight."

In view of the dependence of the Police Department on his testimony, the stated reason for his dismissal was a fair target for cross examination. First of all, the stated reason might not have been the only reason. More importantly, however, there were also the additional possibilities implicit in such circumstances, that his testimony might have been affected by fear of prosecution or hope of favor growing out of the circumstances of his termination. He might have been promised immunity or other advantage. These are possibilities that cannot be overlooked when prior narcotics users are used as narcotics agents—that may have been the case here. It is central to the conclusion here reached that the agent was the principal prosecution witness and in such circumstances a very wide latitude should be allowed in his cross examination.

■ In a criminal case where prior discovery is necessarily limited, defense counsel often cannot know in advance of trial what facts may be brought out on cross examination. For that reason, his cross examination is necessarily to some extent exploratory, and he should be allowed a reasonable latitude even if he cannot state to the court what precise facts his cross examination will develop. A reasonable amount of exploratory questioning should be allowed, based on slight suspicion, especially when the Government's principal witness is involved.

In United States v. Pugh, 141 U.S. App.D.C. 68, 70, 436 F.2d 222, 224 (1970), we pointed out that defense counsel cannot have a foundation in fact for all questions asked on cross examination and that a well reasoned suspicion that a circumstance might be true is sufficient. This may not be the soundest practice for a trial lawyer but the circumstances in which defense counsel finds his client in many criminal trials frequently make it necessary.

■ We do not mean to indicate that either counsel on cross examination may, without a reasonable basis therefor, ask direct questions which tend to incriminate or degrade the witness and thus plant an unfounded bias in the minds of jurors which subsequent testimony cannot entirely displace. To authorize such cross examination the general rule is that the questioner must be in possession of some facts which support a genuine belief that the witness committed the offense or the degrading act to which the questioning relates. If this rule is breached, the violator should be severely censured. Such practice is impermissible and should not be tolerated. At the same time where counsel has some basis, even though it may be very slight,[1] he may ask *nonaccusatory questions* regarding convictions or conduct of this type in a good faith attempt to impeach the witness.

■ In Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), a leading case on the available limits of cross examination, a conviction was reversed for refusal of the trial court to allow cross examination of a Government witness as to his place of residence where defense counsel had some information that the witness was in custody of federal officials. The

---

1. It might be a suspicion based on the actions, appearance or statements of the witness.

opinion states many principles which are applicable here:

> *Cross-examination of a witness is a matter of right.* The Ottawa, 3 Wall. 268, 271, [18 L.Ed. 165.] Its permissible purposes, among others, are that the witness may be identified with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood [citing cases]; that the jury may interpret his testimony in the light reflected upon it by knowledge of his environment [citing cases]; and that facts may be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased [citing cases].

> Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply [citing cases]. It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test without which the jury cannot fairly appraise them [citing cases]. To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial [citing cases]. In this respect a summary denial of the right of cross-examination is distinguishable from the erroneous admission of harmless testimony.

> \* \* \* \* \* \*

> The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted. Storm v. United States, 94 U.S. 76, 85, [24 L.Ed. 42;] Rea v. Missouri, 17 Wall. 532, 542–543, [21 L.Ed. 707;] Blitz v. United States, 153 U.S. 308, 312, [14 S.Ct. 924, 38 L.Ed. 725.] But no obligation is imposed on the court, such as that suggested below, to protect a witness from being discredited on cross-examination, short of an attempted invasion of his constitutional protection from self incrimination, properly invoked. There is a duty to protect him from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him. [President, etc., of Third] Great Western Turnpike Road Co. v. Loomis, 32 N.Y. 127, 132; Wallace v. State, *supra,* [41 Fla. 547, 26 So. 713;] 5 Jones, Evidence (2d Ed.) § 2316. [Emphasis added.]

Alford v. United States, *supra,* 282 U.S. at 691–692, 694, 51 S.Ct. at 219–220.

The Government cites United States v. Kearney, 136 U.S.App.D.C. 328, 420 F.2d 170 (1969) and Tinker v. United States, 135 U.S.App.D.C. 125, 417 F.2d 542, cert. denied, 396 U.S. 864, 90 S.Ct. 141, 24 L.Ed.2d 118 (1969) in support of its position that an evidentiary foundation is a prerequisite for cross-examination on drug use. The *Kearney* court recognized that "in general it is undeniable that it may be proper to develop the matter of drug addiction in an effort to attack a witness's competency and capacity to observe, remember and recall." 136 U.S.App.D.C. at 331, 420 F.2d at 173. However, the *Kearney* court went on to note:

> The issue of narcotics use is one that may properly be handled with some sensitivity lest it result in undue and unnecessary prejudice. There is an interest in avoiding undue evidentiary assault on prosecution witnesses. \* \* \* Prejudice may result if questions asked for the limited purpose of testing, say, opportunity to ob-

serve, are permitted to generate a hostility based on the general odium of narcotics use.

*A judge may not fairly block all probing of an issue like narcotics use by the prosecution's sole eye witness to a murder.* On the other hand, as defense trial counsel himself recognized, the matter of drug addiction, which involves social transgression and the possibility of illegal conduct, is properly approached with awareness of the potential for prejudice of the jury. In some cases the desirable procedure may lie in permitting defense counsel to establish his foundation by questioning the witness out of the hearing of the jury, as is commonplace in a hearing preceding a determination of a witness's competency. (Emphasis added.)

136 U.S.App.D.C. at 332, 420 F.2d at 174. *See* Tinker v. United States, *supra,* 135 U.S.App.D.C. at 127–128, 417 F.2d at 544–545.

■■ From the *Kearney* decision, it is clear that a trial judge must exercise discretion concerning the proper scope of cross-examination of a witness regarding his alleged use of narcotics, due to the highly inflammatory nature of such an allegation. Here the trial judge informed appellant's trial counsel that unless he could substantiate his claim with respect to Dorsey's claimed use of drugs, he could not enter that area on cross-examination. We consider that such limitation unduly restricted his right of cross-examination. Since the witness admitted to counsel that the Government considered one of his tests for narcotics to have been possibly affirmative, and he had been dismissed from the police force shortly thereafter, some limited cross-examination in this area should have been permitted along lines suggested above. That is, (1) by nonaccusatory questions or (2) by questioning outside the presence of the jury.

The case is accordingly remanded to the District Court for a hearing at which the defendant may fully cross-examine the witness as to his use of narcotics at or about the time in question and as to the full reasons for his dismissal from the police force. The court may also receive evidence from the police department as to the reasons for dismissal.[2] If the court determines that the additional evidence so received produces relevant testimony which is material to the credibility of the witness it shall grant a new trial.

Judgment accordingly.

ROBB, Circuit Judge, concurring.

In Wilson v. United States, 232 U.S. 563, 34 S.Ct. 347, 58 L.Ed. 728 (1914) the court held that it was proper to ask a witness whether she was addicted to the use of morphine, and to develop that she had last used it before coming into the courtroom that morning "to show that she was so much addicted to the use of the drug that the question whether, at the moment of testifying, she was under the influence, or had recovered from the effects of its last administration, had a material bearing upon her reliability as a witness." (232 U.S. 568, 34 S. Ct. 349) In United States v. Kearney, 136 U.S.App.D.C. 328, 331, 420 F.2d 170, 173 (1969) the court said "in general it is undeniable that it may be proper to develop the matter of drug addiction in an effort to attack a witness's competency and capacity to observe, remember and recall."

Here the circumstances of the witness Dorsey's separation from the Police Department were grounds for at least a strong suspicion that the witness was addicted to narcotics. This being so I think counsel was entitled to explore the matter on cross examination. That examination would not have been a shot in the dark but would have followed a lead reasonably suggested by the facts.

---

**2.** We would suggest that prior to the hearing defense counsel interview the officers who handled this matter.

Given that lead, counsel should not have been required to produce additional evidence to justify his resort to the invaluable probe of cross examination. Accordingly, I concur in the result.