UNITED STATES of America

v.

Arthur B. KNIGHT, Appellant.

UNITED STATES of America

v.

Robert L. JOHNSON, Appellant.

UNITED STATES of America

v.

Haywood T. KIRKLAND, Appellant.

Nos. 73–1271, 73–1272 and 73–1274.

United States Court of Appeals, District of Columbia Circuit.

Argued March 5, 1974.

Decided Dec. 13, 1974.

Rehearing Denied Jan. 14, 1975.

---

Regina C. McGranery, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, John A. Terry and David G. Latimer, Asst. U. S. Attys., were on the brief, for appellee.

Michael A. Mulroney, Washington, D. C. (appointed by this Court), was on the brief, for appellant in No. 73–1271.

Walter D. Haynes, Washington, D. C. (appointed by this Court), was on the brief, for appellant in No. 73–1272.

John A. Shorter, Jr., Washington, D. C., for appellant in No. 73–1274 and argued for all appellants.

Before TAMM, LEVENTHAL and ROBINSON, Circuit Judges.

PER CURIAM:

Appellants were convicted in 1970 of several counts arising from the robbery of a mail truck. One of the principal prosecution witnesses at trial was Rice, a postal employee who had been aboard the truck as an armed guard at the time of the robbery. During the trial, defense counsel attempted to cross examine Rice and another witness regarding Rice's possible complicity in the robbery.[1] The trial court ruled that such cross-examination would not be permitted unless defense counsel proffered evidence proving that Rice was involved in the robbery.[2] On appeal, this court held that the ruling was erroneous, citing Alford v. United States, 282 U.S. 687, 691–92, 51 S.Ct. 218, 75 L.Ed. 624 (1931) and United States v. Pugh, 141 U.S.App.D.C. 68, 436 F.2d 222 (1970). The case was remanded to the District Court with the following instructions:

> [T]hese cases are remanded to the District Court so that the witnesses Rice and Jones may be recalled for further cross-examination, and further direct examination if indicated, as to credibility and as to Rice's alleged complicity in the crime. In this connection, the District Court will order that all evi-

---

1. Tr. at 559–66, 1081–93, 1749–59. This course of questioning was directed not only to Mr. Rice's credibility but to the validity of the charge that appellants committed robbery from the person of Rice. Tr. at 221.

2. Tr. at 560, 1085, 1090, 1750.

dence in the Government's possession, documentary and otherwise, indicating that Rice was a confederate of the defendants be made available to appellants. *See* Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This would include, of course, all of the statements and testimony of the witnesses Rice and Jones previously withheld. After a full hearing, "[i]f the [trial] court determines that the additional evidence so received produces relevant testimony which is material to the credibility [or the complicity] of the witness [Rice] it shall grant a new trial." United States v. Fowler, [151 U.S.App.D.C. 79, 465 F.2d 664 (1972)].[3]

Pursuant to these instructions a hearing was held in the District Court. The Court heard testimony from several witnesses and received several documentary exhibits in evidence. After the hearing, the District Court issued findings of fact and conclusions of law which it summarized as follows:

> In summary, the Court finds that there is simply *no evidence* by which a jury could conclude that Rice was a conspirator in the robbery. It is not a question of determining whether the evidence on complicity was strictly "relevant" or "material"; there simply is *no* evidence of complicity. Even giving the jury the benefit of weighing the evidence and drawing inferences from it, and of weighing the demeanor of the witnesses, there is simply nothing here on the issue of complicity which could have altered the verdict in this case.[4]

The court then denied defendants' motion for a new trial. This appeal followed.

■ In United States v. Fowler, 151 U.S.App.D.C. 79, 465 F.2d 664 (1972) we considered the problem of exploratory cross-examination and concluded that reasonable latitude should be afforded to defense counsel:

> In a criminal case where prior discovery is necessarily limited, defense counsel often cannot know in advance of trial what facts may be brought out on cross examination. For that reason, his cross examination is necessarily to some extent exploratory, and he should be allowed a reasonable latitude even if he cannot state to the court what precise facts his cross examination will develop. A reasonable amount of exploratory questioning should be allowed, based on slight suspicion, especially when the Government's principal witness is involved.

465 F.2d at 666. While the *Fowler* decision sustains the right of a defendant to put exploratory questions to a Government witness based upon nothing more than "slight suspicion," it does not confer the right to conduct such probes in the presence of the jury. As we stated in *Fowler*, the exploratory cross-examination may be pursued either "(1) by nonaccusatory questions [in the presence of the jury] or (2) by questioning outside the presence of the jury." *Id.* at 668. The latter course permits a less inhibited inquiry in the nature of a *voir dire* examination. This, in effect, was done in this case at the remand hearing. The only question remaining is whether sufficient evidence was produced at the remand hearing to require a new trial. We think not.

■ After reviewing the record of the proceedings subsequent to remand, we are convinced that the purported evidence of Mr. Rice's involvement in the robbery is so tenuous and speculative as to invite summary rejection. The evidence, had it been proffered at trial, could not have served as a predicate for additional cross-examination of Mr. Rice on the issue of his complicity in the robbery. The trial court properly denied appellants' request for a new trial and we adopt its opinion with respect to the issues decided therein.

---

3. *Memorandum* at 3, D.C.Cir. Nos. 24,772, 24,773, 24,889, filed July 14, 1972.

4. Findings of Fact and Conclusions of Law at 7, D.D.C. Cr. No. 525–70, filed January 23, 1973.

■ Our decision regarding the need for a new trial is also dispositive of appellants' various claims under the *Brady* doctrine [5] and the Jencks Act.[6] All documents sought by appellants were produced at the remand hearing.[7] The trial court ruled that they did not provide sufficient evidence of Mr. Rice's involvement to permit additional cross-examination on that subject at a new trial. The appellants do not contend that the new evidence would be useful for any other purpose or that it has led to the discovery of additional evidence warranting a new trial. Even assuming that these exhibits should have been produced by the Government at trial, therefore, failure to produce them was harmless beyond a reasonable doubt.

■ Appellant Johnson objects to the admission in evidence at trial of certain weapons and ammunition found in his apartment at the time of his arrest. The evidence included a .38 caliber pistol, a carbine and a quantity of ammunition. A Government witness testified that the pistol belonged to Johnson and was carried by him during the robbery. Tr. at 1029. Admission of the pistol was unquestionably proper. As to the rifle and ammunition, however, there is some question. The only apparent connection between these items and the crime charged is that they may have been purchased with the proceeds of the robbery. Tr. at 679. Without reaching the question of whether admission of this matter was error, it is clear that any error was harmless beyond a reasonable doubt. There is no danger that the evidence was inflammatory because other real and testimonial evidence that the robbers were armed was properly presented to the jury. Moreover, independent evidence of ·appellant Johnson's guilt—including the eye-witness testimony of another participant in the robbery [8]—was overwhelming.

■ Appellants also contend that the District Court erred in entering judgments, following· guilty verdicts, that imposed sentences running concurrently for both mail robbery, in violation of 18 U.S.C. § 2114,[9] (count one [10]) and robbery

5. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

6. 18 U.S.C. § 3500 (1970).

7. These included: (1) A previously undisclosed statement by Rice to investigators that he had once been at (but not inside) the African Hut—a nightclub where the robbery was allegedly planned; (2) Grand Jury testimony by one Robert Rippey that an "insider" was involved in the robbery; (3) a report of a polygraph test (one of three given) showing deception by Rice. regarding his involvement (contradicted by the results of two other tests); (4) a postal inspector's memorandum of an oral report from a F.B.I. agent relaying an informant's statement to police in Hyattsville, Maryland, that Rice was involved in the robbery.

8. Testimony of Calvin S. Jones, Tr. at 1011 et seq.

9. 18 U.S.C. § 2114 (1970).

§ 2114. Mail, money or other property of United States.

Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years.

10. The count charging postal robbery (count one of the indictment) reads:

On or about December 23, 1969, within the District of Columbia, the defendants Arthur B. Knight, Haywood T. Kirkland, Robert L. Johnson, Calvin S. Jones and John H. Bowman, by force and violence and against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of David W. Rice, mail matter and money which was the property of the United States, in the lawful charge, control and custody of David W. Rice, consisting of about $382,000 in money and in effecting such robbery, the defendants Arthur B. Knight, Haywood T. Kirkland, Robert L. Johnson, Calvin S. Jones and John H. Bowman put the life of David W. Rice in jeopardy by the use of dangerous weapons, that is, a pistol and a· sawed-off shotgun.

while armed, in violation of 22 D.C.Code §§ 2901 and 3202 (count two [11]).

Each appellant was sentenced to three to ten years for mail robbery, ten years being the maximum under the federal statute in view of the fact that the verdict acquitted them of the charge in count one that appellants put the life of the custodian of the mail in jeopardy by the use of a dangerous weapon. Each appellant was given a longer term for robbery while armed, in violation of the D.C.Code.[12]

A question arises notwithstanding the concurrency of the sentences in view of the possibility of adverse collateral effects of a conviction for two felonies. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); United States v. Canty, 152 U.S.App.D.C. 103, 115, 469 F.2d 114, 126 (1972).

The Government relies in this case on the doctrine of Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), that in considering whether the same act or transaction vio-

---

11. The count charging armed robbery under the District of Columbia statute (count two of the indictment) reads:

> On or about December 23, 1969, within the District of Columbia, the defendants Arthur B. Knight, Haywood T. Kirkland, Robert L. Johnson, Calvin S. Jones and John H. Bowman, while armed with dangerous weapons, that is a pistol and a sawed-off shotgun, by force and violence and against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of David W. Rice, property of the United States, in the care, custody and control of David W. Rice, consisting of about $382,000 in money. This is the same money which is mentioned in the First Count of this indictment.

Title 22 of the District of Columbia Code provides:

> § 22–2901. Robbery.
>
> Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery, and any person convicted thereof shall suffer imprisonment for not less than two years nor more than fifteen years. (Mar. 3, 1901, 31 Stat. 1322, ch. 854, § 810; Dec. 27, 1967, Pub.L. 90–226, § 603, title VI, 81 Stat. 737.)
>
> § 22–3202. Committing crime when armed—Added punishment.
>
> (a) Any person who commits a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon (including a sawed-off shotgun, shotgun, machinegun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles)—
>
> (1) may, if he is convicted for the first time of having so committed a crime of violence in the District of Columbia, be sentenced, in addition to the penalty provided

for such crime, to a period of imprisonment which may be up to life imprisonment; and

(2) shall, if he is convicted more than once of having so committed a crime of violence in the District of Columbia, be sentenced, in addition to the penalty provided for such crime, to a minimum period of imprisonment of not less than five years and a maximum period of imprisonment which may not be less than three times the minimum sentence imposed and which may be up to life imprisonment.

(b) Where the maximum sentence imposed under this section is life imprisonment, the minimum sentence imposed under subsection (a) may not exceed fifteen years' imprisonment.

(c) Any person sentenced under subsection (a)(2) of this section may be released on parole in accordance with chapter 2 of title 24, at any time after having served the minimum sentence imposed under that subsection.

(d)(1) Chapter 402 of title 18 of the United States Code (Federal Youth Corrections Act) shall not apply with respect to any person sentenced under paragraph (2) of subsection (a).

(2) The execution or imposition of any term of imprisonment imposed under paragraph (2) of subsection (a) may not be suspended and probation may not be granted.

(e) Nothing contained in this section shall be construed as reducing any sentence otherwise imposed or authorized to be imposed.

(f) No conviction with respect to which a person has been pardoned on the ground of innocence shall be taken into account in applying this section. (July 8, 1932, 47 Stat. 650, ch. 465, § 2; Dec. 27, 1967, Pub.L. 90–226, § 605, title VI, 81 Stat. 737; July 29, 1970, Pub.L. 91–358, § 205, title II, 84 Stat. 600.)

12. Knight: 4 to 12 years; Kirkland and Johnson: 10 to 30 years.

lates two distinct statutory provisions, "the test to be applied to determine whether there are two offences or only one, is whether each provision requires proof of an additional fact which the other does not." The Government stresses that violation of the D.C. armed robbery statutes requires proof that the defendant was armed, which is not required to show violation of the mail robbery statute, and that violation of the federal law requires proof that the person robbed was the custodian of mail, and that this is not required to show a violation of the District Code.

Cases on the issue of multiple sentences tend to focus on legislative intent, wherein the court seeks to determine whether the legislature intends one criminal act to be prosecutable under two different statutory provisions. The leading cases are Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), for the principle of lenity, and Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), for the principle of separate factual elements, but there are many cases in this field.

However, the field is not without constitutional aspects. The Government asserts as being beyond question that had this robbery happened in any of the 50 states, appellants could of course have been tried by the state for robbery under a state statute and by the United States under the federal mail robbery statute. Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). This court is of the view that even this long settled doctrine is of dubious vitality in view of Benton v. Maryland, *supra*.[13] There is a serious question whether the doctrinal line from *Fox* to *Bartkus* has not been eroded by Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).[14]

■ This point need not be pursued, however, in view of the clear Supreme Court pronouncement that where the *same* sovereignty is involved the double jeopardy principle bars multiple prosecutions for the same offense by different elements of that sovereignty. The principle was applied in Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970) to prohibit multiple prosecutions by states and municipalities, a ruling that overturned the constitutional doctrine of some 21 states. Waller's act in removing a canvas mural of a municipality affixed to a wall of a city hall led to his conviction and 180 day sentence for violation of an ordinance prohibiting destruction of city property. This was held to prohibit his later charge by the state on a charge of grand larceny that was based on the same acts. The Court

13. The Supreme Court's ruling in *Bartkus* and earlier cases, *e. g.*, Jerome v. United States, 318 U.S. 101, 105, 63 S.Ct. 483, 87 L.Ed. 640 (1943), and indeed expressions giving back to Fox v. Ohio, 5 How. 410, 434, 46 U.S. 410, 12 L.Ed. 213 (1847), say the same act can be prosecuted by both the federal and state governments. The rationale, as presented in *Fox* and *Bartkus*, is the then existing doctrine that the Double Jeopardy Clause is inapplicable to the states. That proposition was repudiated by Benton v. Maryland, *supra*.

14. In Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) the Court had held the Fifth Amendment privilege against self-incrimination is fully applicable to the states. *Murphy* accompanied this with a ruling that one jurisdiction in our federal system may not compel a witness to give testimony which might incriminate him under the laws of another jurisdiction.

In *Murphy* the Court expressly overruled its decision in Feldman v. United States, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408 (1944). Yet *Feldman* had been put in essence as a corollary of the proposition that the state and federal government are separate and independent sovereignties, and the *Feldman* opinion relied on the doctrine of Fox v. Ohio, *supra*, that there could be successive prosecutions for the same offense as violations of state law and of federal law.

It is appreciated that the separate sovereignties doctrine of *Fox* was referred to and was not repudiated in Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970). But it was limited in such a way as to override the doctrine of some 21 states treating municipalities and states as separate sovereigns for double jeopardy purposes. If there were successive prosecutions for what the Court considered to be the same conduct and offense, the *Fox* doctrine would have to be reconsidered.

expressly approved the holding of Grafton v. United States, 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084 (1907) that "a prosecution in a court of the United States is a bar to a subsequent prosecution in a territorial court, since both are arms of the same sovereign."[15] We have no doubt that the same principle applies so as to bar multiple prosecutions by the District of Columbia and the United States.

The question before us is not one of successive prosecutions but of a combined prosecution, due to the unique statutory provisions that permit the United States Attorney for the District of Columbia to combine in one indictment, triable in the United States District Court for the District of Columbia, violations of both the United States Code and the District of Columbia Code.[16] This obviously does not involve the high purpose of the Double Jeopardy Clause to safeguard against "repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity . . . ."[17] Indeed, the opportunity of the prosecution under modern procedure to consolidate in a single trial all issues arising out of a single transaction, undercuts any claims of need to have recourse to multiple prosecutions in contravention of the policy of the Double Jeopardy Clause. This court has commented on the advisability of combining all possible charges into one prosecution so as to avoid double jeopardy problems and conserve judicial energies.[18]

But if the problem is less, it is not insignificant when persons in the District of Columbia are branded for both federal and District of Columbia Code felonies for what is essentially a single transaction. The problem is accentuated, and with constitutional considerations, if persons in every state of the Union committing the same act are not put under a multiple federal-state brand—whether because of constitutional barriers (see supra, note 14), or because of the realistic consideration, identified as long ago as Fox, that except in unusual or emergency cases there is no sound warrant for multiple federal and state convictions even assuming constitutional authority.

Treating the question as one of legislative intent, we go beyond the more familiar problem of discerning the intent of overlapping provisions of federal statutes[19] toward reconstructing a legislative intention of overlapping federal and District statutes. This kind of question engaged the court's attention in United States v. Spears, 145 U.S.App.D.C. 284, 449 F.2d 946 (1971), and United States v. Canty, 152 U.S.App.D.C. 103, 469 F.2d 114 (1972). In Spears the court remanded for resentencing because it discerned a legislative intent that required vacating a conviction on a count charging assault of a mail custodian with intent to rob, in violation of 18 U.S.C. § 2114, when this had been combined for trial on a count charging robbery while armed, in violation of 22 D.C.Code §§ 2901 and 3202.

The Government argues that Spears rests on a special gloss of doctrine applicable when only an attempt at mail robbery is charged. But in Canty the defendants were convicted of a robbery of a federally insured bank, not of attempt. The court held that the robbery of four tellers would not sustain multiple convictions even though there were concurrent sentences, applying the rule that unless the intent of Congress is stated "clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple of-

15. Holding of Grafton as stated in Waller, see 397 U.S. at 393, 90 S.Ct. at 1188.

16. See 11 D.C.Code § 502 (1973).

17. Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

18. Fuller v. United States, 132 U.S.App.D.C. 264, 289–90, 407 F.2d 1199, 1224–25 (1968) (en banc), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969).

19. See, e. g., Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957).

fenses."[20] And more pertinently the court held invalid the imposition of a sentence for assault with a dangerous weapon, 22 D.C.Code § 502, on top of the sentence for federal bank robbery, even though different elements of proof were involved—the federal law not requiring proof that the offender was armed, and the District provision not requiring proof that a bank was involved. The court stated that the *Blockburger* test was used "traditionally" as a starting point,[21] but added that even though the D.C. Code and U.S.Code provisions "require different elements of proof, there must still be a determination that Congress intended the provisions to bear separate punishments when applied to a single act or transaction." 152 U.S.App.D.C. at 116, 469 F.2d at 127. In *Canty* the court analyzed the structure of the federal bank robbery statute, and found that it "subdivides the offense into a series of steps—a continuum running from entry with intent to rob, to robbery by force and violence, to robbery with the aid of a dangerous weapon . . . ."[22] The penalties were increased as the offense became aggravated. The court said that the prosecution had impermissibly charged on the lowest tier of robbery in the federal scheme, and then reached out of the federal scheme for the aggravated portion of the offense to the catch-all assault provision of the District Code. This was held to constitute an impermissible circumvention of the statute where "Congress explicitly imposed a ceiling of one conviction and twenty-five years in prison."[23]

While *Canty* can be distinguished from the case at bar, its analysis is pertinent. In the case of the mail robbery statute, 18 U.S.C. § 2114, the scheme is not as comprehensive as that of the federal bank robbery statute. But the statute has a long and somewhat intricate history, as appears from *Spears*. In its wisdom Congress has provided these gradations: For robbery (of mail matter), or assault of the mail custodian with intent to rob, prison for not more than 10 years (for the first offense). For a second offense, or if the offender "wounds the person having custody of such mail, money . . . or puts his life in jeopardy by the use of a dangerous weapon," 25 years imprisonment.

Congress has thus deliberately addressed itself to the distinction between simple mail robbery and the case where a dangerous weapon is involved, and has provided an increase of punishment only if the use of the dangerous weapon puts the life of the mail custodian in jeopardy. We think the principles of *Canty* are applicable. It is no ground of distinction that the prosecutor in the case at bar did not initiate the charge on the lowest tier of the mail robbery statute. When the jury acquitted of the charge of putting the life of the mail custodian in jeopardy, all that was left was the included charge of, and conviction on, the first tier of the mail robbery statute.

■ The "traditional" rule of construction of *Blockburger* is offset somewhat by the rule that in the absence of plain legislative intention "doubt will be resolved against turning a single transaction into multiple offenses." If anything, the mail robbery statute contemplates a single conviction, not multiple convictions, when the first tier of mail robbery is aggravated by the use of a deadly weapon.

**20.** 152 U.S.App.D.C. at 115–16, 469 F.2d at 126–27, *quoting* Bell v. United States, 349 U.S. 81, 84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955).

**21.** As in United States v. Maude, 156 U.S. App.D.C. 378, 481 F.2d 1062 (1973), where, however, the court stated that the forgery of the stamp, and the possession of a forged stamp with intent to use it deceptively, were charged and shown in proof to be "separate enterprises comprising separate historical events," 481 F.2d at 1078.

**22.** 152 U.S.App.D.C. at 116, 469 F.2d at 127.

**23.** *Id.* at 117, 469 F.2d at 128.

This conclusion does not mean that the deadly weapon aspect of the offense must be wholly ignored. As *Canty* points out, the discernment of legislative intention that there be a single conviction for the mail or bank robbery, and assaults comprised therein, does not preclude the conviction for carrying a dangerous weapon, in violation of 22 D.C.Code § 2304,[24] an offense that was complete without regard to any later use of the weapon in the robbery.

The appellants argue that the armed robbery conviction must be vacated, rather than the mail robbery count which carries a lower penalty. We are persuaded by the government's view that the reconstruction of legislative intent would accommodate itself to the view that when Congress amended 22 D.C.Code § 2901 in 1967, providing a higher penalty for robberies in the District than has been provided since 1948 for federal mail robbery, it intended to provide the sentencing judge with discretion in determining the penalty. What is impermissible is not the joinder of offense for trial (as appears from *Fuller*, cited *supra*, note 18), but the joinder of judgments even with concurrent sentences. To maintain the sentencing discretion of the trial judge, without any possibility of confusion due to the multiple counts and verdicts, the case will be remanded to the trial court, with instructions to vacate the judgment on either count one or count two, and to resentence on the other count, as it may deem, after hearing from counsel, in the interest of justice.[25]

So ordered.

24. *See id.* at 118, 469 F.2d at 129: "The prohibition on carrying a dangerous weapon is designed to serve interests that the federal bank robbery scheme does not purport to serve."

25. While the contentions under discussion in this opinion were advanced by appellants Knight and Johnson, in the interest of justice we extend the scope of our judgment to appellant Kirkland.

Another question may arise by virtue of the fact that the convictions of appellants

Kirkland and Johnson on count 7 for the assault with a dangerous weapon of Arnold, the driver of the mail truck, were affirmed by this court's order of July 14, 1972. There were no allegations of error as to this court on the ground of impermissible joinder of judgment or need for resentencing. In the interest of finality, our judgment today will permit but not require the district court to reconsider the judgment on count 7, if deemed appropriate in the interest of justice.