**UNITED STATES of America, Appellee,**

**v.**

**Calvin SUMLER, Appellant.**

**Nos. 96–3159, 96–3160 and 96–3161.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 19, 1998.

Decided March 10, 1998.

Edward C. Sussman, Washington, DC, appointed by the court, argued the cause and filed the briefs for appellant Calvin Sumler.

Roberto Iraola, Washington, DC, appointed by the court, argued the cause for appellant Michael Jefferson, with whom Benjamin B. Klubes, Washington, DC, appointed by the court, was on the briefs.

William J. Garber, Fairfax, VA, appointed by the court, argued the cause and filed the briefs for appellant Gerald Smith.

Stuart G. Nash, Assistant United States Attorney, Washington, DC, argued the cause for appellee, with whom Mary Lou Leary, United States Attorney at the time the brief was filed, John R. Fisher, Michael L. Volkov, and James H. Dinan, Assistant United States Attorneys, Washington, DC, were on the brief.

Before: EDWARDS, Chief Judge, SILBERMAN and HENDERSON, Circuit Judges.

SILBERMAN, Circuit Judge:

Appellants were convicted of first degree murder while armed, D.C.CODE §§ 22–2401, 3202 (1981), and killing in furtherance of a continuing criminal enterprise (CCE), 21 U.S.C. § 848(e)(1)(A) (1994). They contend that the imposition of cumulative sentences for these two offenses is improper because the federal murder convictions merge with the D.C.Code convictions. We affirm.

## I.

· Appellants belong to the so-called Fern Street Crew, an organization which distributed crack cocaine for seven years in the District of Columbia and Maryland. The Crew's activities were facilitated by its use of violence to defend territory from rival drug dealers and subvert the efforts of the criminal justice system. Following a four month trial, appellants were convicted of numerous offenses, including murder, armed robbery, kidnapping, and drug and RICO conspiracies; each was given multiple life sentences and other assorted prison terms. Appellants bring numerous challenges to their convictions, only one of which merits discussion.[1] They contend it was an error of law for the district court to sentence them to two life terms for the same killing, one sentence for violation of the federal CCE murder statute and the other for violation of the District's first degree murder statute.[2] They argue that in the absence of clear legislative intent, defendants may not receive multiple punishments for the same act under federal and D.C. statutory schemes. Such sentences, they claim, run afoul of the Fifth Amendment's prohibition against double jeopardy.

## II.

While literally proscribing successive prosecutions for the same offense, the Double Jeopardy Clause also has been interpreted to bar the imposition of multiple punishments for the same offense. *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). Because certain offenses, while nominally distinct, might be considered the same, our inquiry is directed to legislative intent. The Double Jeopardy Clause is only implicated if the legislature intended for two "separate" crimes to be treated as the same offense. *United States*

---

1. We have fully considered all other arguments advanced by appellants and are satisfied that the district court's judgments should stand with the following exceptions. The government concedes that appellant Smith, under District law, cannot stand convicted of both first degree murder (premeditated) while armed and first degree murder (felony murder) while armed with respect to the same killing. *See Byrd v. United States*, 500 A.2d 1376, 1384 (D.C.1985), *adopted en banc* 510 A.2d 1035, 1037 (D.C.1986). We therefore vacate Smith's conviction for the felony murder of Ucal Riley. The government also concedes that Jefferson and Smith cannot stand convicted of both felony murder and the underlying felony. *See Leasure v. United States*, 458 A.2d 726, 730–31 (D.C.1983). We therefore vacate the convictions

of Jefferson and Smith for the attempted robbery of Marcus Murray.

2. Appellant Sumler was convicted of one count of premeditated first degree murder while armed and one count of CCE murder for the killing of Anthony Hinton. Appellants Jefferson and Smith were convicted of two counts of first·degree felony murder while armed and two counts ·of CCE murder for the killings of Marcus Murray and Victor Hartnett. Appellant Smith was also convicted of one count of premeditated first degree murder and one count of CCE murder for the killing of Ucal Riley (Smith's additional conviction for· felony murder regarding the Riley killing was vacated earlier in the opinion. *See supra* note 1.)

v. Hoyle, 122 F.3d 48, 49 (D.C.Cir.1997); see Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). To determine Congress' intent, we apply the test set forth in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). If, in comparing the elements of the two crimes, "each provision requires proof of an additional fact which the other does not," id. at 304, 52 S.Ct. at 182, then the offenses are not the same. If, however, one offense contains all of the elements of the other offense, then the offenses are presumed to be the same and multiple punishments .may not be imposed unless the legislature clearly indicated otherwise. United States v. Baker, 63 F.3d 1478, 1494 (9th Cir.1995).

■ In this case, appellants concede that the CCE murder offense and the District's first degree murder offense each requires an element not included in the other.[3] They claim, however, that the Blockburger test in this instance should begin but not end the analysis. They point to a line of our cases from the 1970s which suggests that even though a District offense and a federal offense may, under Blockburger, "require different elements of proof, there must still be a determination that Congress intended the provisions to bear separate punishments when applied to a single act or transaction." United States v. Canty, 469 F.2d 114, 127 (D.C.Cir.1972). Appellants then assert that Congress did not intend multiple punishments to be imposed for the same killing under the District's first degree murder statute and the federal CCE murder statute.

To be sure, support exists in prior case law, at least in dicta, for appellants' contention. They rely on two notions to support their argument that we must go beyond Blockburger in assessing whether multiple punishments may be imposed in cases where a defendant commits a federal crime and a District crime in the same transaction. Appellants first point to the general proposition that "in the absence of plain legislative inten-

tion 'doubt will be resolved against turning a single transaction into multiple offenses.'" United States v. Knight, 509 F.2d 354 (D.C.Cir.1974) (quoting Bell v. United States, 349 U.S. 81, 84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955)). Bell, however, dealt with the appropriate unit of prosecution under a single statutory provision. The question there was whether the transportation of more than one woman across state lines for the purposes of prostitution in a single transaction would be considered one violation or multiple violations of the Mann Act. The Supreme Court, however, quickly clarified that Bell's rule of lenity did not apply to violations of "separate offenses created by Congress at ... different times." Gore v. United States, 357 U.S. 386, 391, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405 (1958). And while there has been division within the Supreme Court recently over whether a "sameconduct" inquiry should be added to the Blockburger test in cases involving successive prosecutions, see Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), rev'd by United States v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the Court has held consistently that satisfying Blockburger is sufficient for cases involving multiple punishments. See Dixon, 509 U.S. at 704, 113 S.Ct. at 2860 (Scalia, J., opinion of the court); Dixon, 509 U.S. at 745-46, 113 S.Ct. at 2881-82 (Souter, J., concurring in the judgment and dissenting in part).

■ We have also expressed concern about a more specific issue: the fairness of multiple punishments in the context of D.C.CODE § 11-502(3)(1981), which authorizes the United States Attorney to combine in one indictment, triable in the United States District Court for the District of Columbia, criminal violations of both federal and District law. This provision places District defendants in the unique position of being tried under two statutory schemes at the same time; although the United States Constitution does not bar a defendant in any

---

3. To prove a CCE murder violation, the government must establish the existence of a continuing criminal enterprise, an element not required by either the premeditated murder or felony murder variation of the District's statute. Conversely, the District's felony murder statute requires that

the killing occur during the perpetration of a specified felony, an element not included in the CCE murder offense. And the District's premeditated murder statute requires proof of premeditation, an element not necessary to establishing a CCE murder violation.

one of the 50 states from being charged and punished under federal law and state law for the same conduct, *see, e.g., Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), such prosecutions must be separate.[4]  Given that successive federal and state prosecutions are relatively rare, § 11–502's joinder provision means that District residents, as a practical matter, are much more likely to be prosecuted under separate statutory schemes for the same conduct, and hence, receive more severe punishments. Though we once suggested that such a disparity implicates "constitutional considerations," *see United States v. Knight*, 509 F.2d at 361, we later rejected the argument that this result violated the Equal Protection Clause.  *See United States v. Jones*, 527 F.2d 817, 822 (D.C.Cir.1975).

██ Because District residents live under only one sovereign while most Americans live under two, current double jeopardy jurisprudence guarantees that some inconsistency will exist between the treatment of defendants in the District and their counterparts in the 50 states.  While District defendants suffer to the extent that they are far more likely to be charged, convicted, and punished under two different statutory schemes, they also benefit in important respects.  A person acquitted of a crime under District law may not be charged with that same crime under federal law in a successive prosecution (or vice versa); the same sovereign may not take a second bite at the apple.  *See, e.g., United States v. Shepard*, 515 F.2d 1324, 1331–32 (D.C.Cir.1975).  A defendant across the border in Virginia, however, who has been acquitted in a state proceeding, may be prosecuted again for the same conduct under an identical federal statute.  Moreover, District defendants cannot be given cumulative sentences for a federal offense and a District offense that fail the *Blockburger* test, but the Double Jeopardy Clause of the Fifth Amendment does not prohibit the imposition of multiple punishments when a federal offense and a state offense fail *Blockburger*.

To take appellants' approach would exacerbate an aspect of inequality that already works in favor of District defendants.  Under the rule they urge, District defendants could not be given cumulative sentences for a federal offense and a District offense committed in a single transaction absent some clear indication of congressional intent, even if these distinct offenses satisfy *Blockburger*.  But since a federal offense and a state offense do not even have to pass the *Blockburger* test in order for multiple sentences to be imposed, the addition of a more searching examination of legislative intent in the case of District defendants would only heighten the degree of the disparate treatment.

We do not believe that such an outcome is mandated by precedent.  Appellants rely on cases that do not speak precisely to the issue at hand.  In *United States v. Spears*, 449 F.2d 946 (D.C.Cir.1971), we interpreted 18 U.S.C. § 2114 (1964) to proscribe assaults which are part of "an *unsuccessful* attempt to rob a mail carrier."  *Id.* at 953 (emphasis added).  We therefore held that one could not be convicted of both a completed robbery under the D.C.Code and an assault under 18 U.S.C. § 2114.  *Spears* turns not on the question of when to apply *Blockburger*, but our inquiry into the meaning of the mail robbery statute.

In *United States v. Canty*, 469 F.2d 114 (D.C.Cir.1972), we held that a defendant could not be sentenced for both federal bank robbery by force or violence under 18 U.S.C. § 2113(a) (1970) and assault with a dangerous weapon under D.C.Code § 22–502 (1967). While the two offenses do satisfy *Blockburger* by requiring different elements of proof, we nevertheless noted that the federal bank robbery statute established "a comprehensive scheme for prosecuting and punishing persons who rob federally-insured banks" and "subdivide[d] the offense into a series of steps—a continuum running from entry with intent to rob ... to robbery resulting in death or kidnapping."  *Id.* at 127.  As Con-

4. A defendant may be tried and punished under state law then federal law in any of the 50 states. *See Bartkus*, 359 U.S. at 132, 79 S.Ct. at 682–83. But the Double Jeopardy Clauses of certain state constitutions have been interpreted, under many circumstances, to prohibit state prosecution of a criminal act that has already been the subject of a federal prosecution.  *See, e.g., Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971).

gress had only provided in the federal bank robbery statute for a maximum punishment of 25 years for thefts involving assaults with a dangerous weapon, we thought it impermissible for a defendant to receive a maximum sentence of 30 years by dividing the offense up into bank robbery by force or violence under the federal statute (20 years) and assault with a dangerous weapon under the D.C.Code (10 years). By neglecting to prosecute entirely within the federal bank robbery scheme, the government sought to evade Congress' "carefully crafted hierarchy of penalties." *Id.* at 128.

Applying the principle of *Canty* in *United States v. Knight,* we considered the hierarchy of penalties imposed by the mail robbery statute. Under 18 U.S.C. § 2114 (1970), an offender could receive a maximum of 10 years for mail robbery or assault of a mail custodian with intent to rob and 25 years for putting a mail custodian's life in jeopardy during such a robbery by the use of a dangerous weapon. In *Knight,* appellants had been convicted of mail robbery and robbery while armed under D.C.Code § 22–2901 (1967). Examining the mail robbery statute, we concluded that Congress had "deliberately addressed itself to the distinction between simple mail robbery and the case where a dangerous weapon is involved, and ... provided an increase of punishment *only* if the use of the dangerous weapon puts the life of the mail custodian in jeopardy." *Knight,* 509 F.2d at 362 (emphasis added). This hierarchy of penalties, however, would have been undermined had the District's armed robbery statute been used to enhance penalties in cases where the jury failed to find that the weapon had put the mail custodian's life in jeopardy. The cumulative sentences at issue in *Knight,* therefore, could not stand.

While delineating coherent principles from this line of cases may not be easy, we think it is clear that appellants' sentences are not implicated. We have concluded that a defendant may not be sentenced under both federal and District statutory schemes only in cases "where the federal offense and local offense are identical or one would be a lesser included offense of the other." *Jones,* 527 F.2d at 821. This is not the case here.

Moreover, the federal CCE murder statute is not a comprehensive scheme with a step-by-step hierarchy of increasing penalties as in *Canty* and *Knight.* Those who added the murder provision to the CCE statute obviously must have had full knowledge that first degree murder was already illegal in every state of the Union and the District of Columbia, and there is no evidence that Congress intended for the punishment under the CCE murder statute to be exclusive. If a defendant in Virginia may be prosecuted and punished under both the CCE murder statute and the Old Dominion's first degree murder statute, we see little problem with allowing a similar outcome in the District.

\* \* \*

With the exception of the sentencing mergers conceded by the government, appellants' convictions are hereby affirmed.