**Miles A. HAMPTON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 7370.**

District of Columbia Court of Appeals.

Argued Jan. 17, 1974.

Decided April 18, 1974.

Rehearing En Banc Denied May 10, 1974.

599

David Carey Woll, appointed by this court, for appellant.

Harry R. Benner, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, John A. Terry and C. Madison Brewer, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, FICKLING and PAIR, Associate Judges.

FICKLING, Associate Judge:

Appellant Miles A. Hampton was convicted in a jury trial of first degree burglary (D.C.Code 1973, § 22–1801), rape (D.C.Code 1973, § 22–2801), and assault with a dangerous weapon (D.C.Code 1973, § 22–502). Appellant contends that the trial judge erred when he: (1) refused to allow defense counsel to impeach the complainant with prior inconsistent testimony and (2) stated before the jury that the complainant had identified appellant as her attacker. We affirm.[1]

The complainant went to sleep in her apartment bedroom at about 8 p. m. on June 1, 1972. Approximately three hours later, she awoke to find a man whom she had never seen before standing over her brandishing a knife. The intruder ordered her into the adjoining bedroom and proceeded to rape her. Complainant testified that she submitted to the rape out of fear of being knifed. The rapist was in the apartment from 5 to 10 minutes. After he

1. The trial court did not err in giving the *Allen* charge. Simms v. United States, D.C.App., 276 A.2d 434 (1971).

left the premises, a kitchen knife and $15 were discovered missing.

Appellant denied entering complainant's apartment and raping her on the night of June 1, 1972. He was, however, unable to remember his whereabouts on that evening.

Nearly 11 weeks after the incident, complainant was shown a group of 16 photographs by Sergeant Tague, among which was included a photograph of appellant. Without hesitation, she identified appellant as her attacker. Thereafter, both at a lineup and in court, she positively identified appellant.

We consider first appellant's attempts to impeach complainant with prior inconsistent statements. At one point during the cross-examination of complainant, defense counsel asked her whether Sergeant Tague had told her *before* he showed her the photographic array that the police had just arrested a suspect. Complainant responded that she was told a suspect had been arrested *after* she viewed the photographs. Defense counsel then attempted to impeach the complainant by her grand jury testimony. Before the grand jury she had testified to the effect that Sergeant Tague had called her at work and told her someone had just been arrested for housebreaking; consequently, they wanted her to look at a photographic array. The prosecutor's objection to this impeachment attempt was sustained on the ground the inconsistency was irrelevant.

Appellant contends that the trial judge's ruling wrongfully encroached upon his right of cross-examination. We agree that the trial judge erred in cutting off appellant's impeachment attempt; however, we do not think the error caused substantial prejudice, which is necessary in order to reverse. *See* United States v. Pugh, 141 U.S.App.D.C. 68, 436 F.2d 222 (1970); Howard v. United States, 128 U.S.App.D. C. 336, 341, 389 F.2d 287, 292 (1967); D. C.Code 1973, § 11–721(e).

▬ ▬ It is well established "that if inquiry on cross-examination is directed to the witness's prior contradictory statements about collateral matters, the cross-examiner is precluded from offering extrinsic evidence to contradict the collateral statements." Phillips v. Mooney, D.C.Mun. App., 126 A.2d 305, 307 (1956), *citing* Ewing v. United States, 77 U.S.App.D.C. 14, 135 F.2d 633 (1942), cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943). To determine whether a contradictory statement concerns a collateral matter, the applicable test is: "Could the fact, as to which the prior self-contradiction is predicated, have been shown in evidence for any purpose independently of the self-contradiction?" *Phillips, supra,* 126 A.2d at 308; 3A Wigmore, Evidence § 1020 (Chadbourn rev. 1970).

▬ Thus the question arises: Was complainant's statement before the grand jury—that Sergeant Tague indicated to her a suspect's picture would be included in the photographic array—admissible independently of the self-contradiction? We think so.

The government concedes that appellant's proposed impeachment is relevant to the admissibility of the photographic identification. *See* United States v. Gambrill, 146 U.S.App.D.C. 72, 75 n. 3, 449 F.2d 1148, 1151 n. 3 (1971). But since appellant's pretrial motion to suppress the photographic identification as unduly suggestive was denied, it is argued that this line of inquiry was no longer relevant at trial. We disagree.

It is basic that once the photographic identification is deemed admissible, the question of identification has not ended. The fact finding function of the jury remains; they must consider and weigh this identification.

Even where the police have followed the most correct photographic identification procedures, there is some danger that a

witness may make an incorrect identification. Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). This danger is lessened, however, "by a course of cross-examination at trial which exposes to the jury the method's [photographic identification] potential for error." *Id.* at 384, 88 S.Ct. at 971.

■ There is some degree of suggestiveness when a police officer indicates to a witness that a suspect's picture is among the photographs in the array.[2] Thus, an impeachment on this point is a relevant factor to be considered by the jury in judging the weight to be given the photographic identification—particularly where, as in this case, there is a sole eyewitness.

■ Nevertheless, after carefully examining the record, we are of the view that appellant received a fair though not perfect trial. The identification testimony of complainant cannot fairly be characterized as "paper thin." There was ample opportunity to closely observe appellant's face when she was first awakened in her well-lit bedroom (she had gone to sleep with the lights on). She unequivocally identified appellant at the photographic array, the lineup, and in court. She testified that these identifications were made because she recognized his face. In view of this strong identification evidence, it is difficult to "see that the cutting short of appellant's right of cross-examination could have been influential in the outcome" of the case. *Pugh, supra,* 141 U.S.App.D.C. at 72, 436 F.2d at 226. We conclude, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). *See also* Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *cf.* Hazel v. United States, D.C.App., 319 A.2d 136 (decided this date).

■ Appellant next argues that the trial judge prevented him from impeaching the certainty of complainant's identification of him at the lineup. The purpose of the attempted impeachment was to show that before the grand jury complainant said in effect, "I think I was positive when I identified [appellant]"; whereas, at trial she said, "I am absolutely certain." The attempted impeachment was as follows:

Q. [MR. WOLL, defense counsel] Now, do you remember the following— you were asked the question, "What happened when you went to the lineup?"

MR. WOLL: Your Honor, I'm at page 6 of the grand jury testimony.

Q. You were asked what happened when you went to the lineup, and you answered, "I recognized the guy." And you were asked the question by the prosecutor, were you positive, and you answered, "I think I was." Was that your answer?

A. I think I said yes.

Q. You don't think you said, "I think I was"?

MR. BREWER [Prosecutor]: Your Honor, may we approach the bench?

THE COURT: Please step down, ma'am.

(Thereupon the witness stepped down from the stand; counsel for both parties approached the bench and conferred with the Court. . . .)

At the bench conference the prosecutor pointed out that the alleged contradictory grand jury statement was taken out of context because in the very next question, the following exchange occurred:

Q. [Prosecutor] Well, I mean, when you looked up there and saw the man, were you sure in your own mind this was the same man that assaulted you?

2. *See Gambrill, supra,* 146 U.S.App.D.C. at 75 n. 3, 449 F.2d at 1151 n. 3.

A. [COMPLAINANT] Right.

It is apparent that complainant's alleged inconsistent grand jury testimony, when placed in its proper context, is consistent with her testimony on the same subject at trial. Accordingly, the trial judge did not abuse his discretion when he cut off this attempted impeachment.

Appellant's last contention concerns the following colloquy:

Q. [MR. WOLL, defense counsel] All right. Now, let me ask you this: Was this man, this attacker, was he a tall man, a slim man; is that how you described him?

A. [COMPLAINANT] Right.

THE COURT: I think she's identified the defendant as the attacker in the case.

MR. WOLL: Well, your Honor, yes. I'm asking her if this man who attacked her—

THE COURT: The defendant, yes.

Appellant argues that as a result of this exchange, the trial judge inadvertently indicated to the jury that he thought appellant was the attacker; therefore, the trial judge substantially prejudiced his defense.

■ Although the trial judge's remarks were somewhat abrupt, we think the meaning was clear: Defense counsel's questioning of complainant established that she identified appellant as her assailant. Even if the trial judge's remarks could be construed as a reflection of his opinion with respect to the guilt of appellant, the error, if any, was cured by the following instruction to the jury: "[S]o, if I have done anything that you have taken as my opinion as to how you should decide this case, disregard it and, believe me, I have tried not to do so."

Affirmed.