**In the Matter of W. A. F., Appellant.**

**No. 12529.**

District of Columbia Court of Appeals.

Argued Nov. 8, 1978.

Decided Oct. 26, 1979.

tification was erroneously admitted at trial; (2) that the trial court erred in permitting an in-court identification in spite of a pre-trial ruling to the contrary; and (3) that the trial court unduly restricted appellant's right to cross-examination. We hold that it was error for the court to curtail cross-examination regarding matters related to the certainty of complainant's identification of appellant and Detective McConnell's post-lineup remarks made to complainant.

According to the evidence, on November 10, 1976, at approximately 7:00 A.M., the complainant was walking in Southwest Washington, D.C., when a young man grabbed her by the arm. The youth threatened to kill her if she did not give him all her money. After taking her money, a total of one dollar, he began to make sexual advances. He forced complainant to walk with him to a nearby secluded area, made her undress and lie on the ground, and attempted to engage in sexual intercourse with her, but he could not complete the act. He threatened her with death if she tried to move, and ran away. Complainant estimated that the entire episode lasted from three to five minutes, during which time her assailant either stood close to and facing her or, for the brief period of the attempted rape,[3] lay on top of her, face to face.

Complainant dressed herself and notified the police, to whom she was able to give a detailed description of the assailant. Later that day, she described the youth to a police artist, who drew a sketch based on the description. Still later on the same day, for the third time, she repeated the description to Detective McConnell of the Metropolitan Police, who had been assigned to the case. The three descriptions were essentially the same and were quite detailed as to the assailant's clothing, body build, and facial features.[4] In all three descriptions, she

Roger H. Moore, Washington, D. C., appointed by this court, for appellant.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D. C., at the time the brief was filed, Richard W. Barton, Deputy Corp. Counsel, Michael J. Dowd, Jr. and Robert Ross, Asst. Corp. Counsels, Washington D. C., were on brief, for appellee.

Before MACK and FERREN, Associate Judges, and YEAGLEY, Associate Judge, Retired.

YEAGLEY, Associate Judge, Retired:

Appellant, a juvenile, was found guilty of attempted rape[1] and robbery[2] and, therefore, was adjudged delinquent. He seeks reversal of this adjudication on three grounds: (1) that evidence of a lineup iden-

---

1. D.C.Code 1973, § 22–501.

2. D.C.Code 1973, § 22–2901.

3. Complainant estimated that the youth was on top of her for approximately 30 seconds.

4. For example, the description given to the police artist was: black male, young, approx. 16 yrs. of age, 5′11–6′, med. brn. complex., slim but well built, long legs, broad round face, pug nose, and big eyes. Wearing maroon knit cap, light blue waist length jacket, light blue jeans

mentioned that the man was young, had a broad, round face, and a light to medium brown complexion.

When the police arrested appellant in connection with this case and placed him in a lineup, the complainant identified appellant as her assailant, but said: "I still can't be positive . . . ." Immediately following the lineup, Detective McConnell told complainant that she had, in fact, identified the person whom the police arrested.

Appellant filed a pretrial motion to suppress any evidence of the lineup identification and any in-court identification. After a hearing, the motions court found that the lineup was not unduly suggestive. Accordingly, the lineup identification was not suppressed. The motion to suppress was granted, however, as to any in-court identification. The court's ruling was based on three factors: (1) the fact that appellant was dark-complexioned, not medium-to-light-complexioned as complainant had originally described her assailant; (2) complainant's uncertainty in making the lineup identification; and (3) the suggestive remarks made by Detective McConnell immediately after the lineup. In the opinion of the motions court, based on the totality of the circumstances with regard to an in-court identification, the procedure was unnecessarily suggestive and conducive to irreparable mistaken identity. The court observed that the detective should not have said that she picked the right man because that reinforced her selection. The court then ruled that there was no independent source for an in-court identification and ordered the suppression of any in-court identification testimony. *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Patterson v. United States,* D.C. App., 384 A.2d 663 (1978).

The defense theory at trial was mistaken identity, based on alleged discrepancies between appellant's physical appearance and the police drawing. Complainant testified that she had picked her assailant from a lineup and that she had been positive of her identification when she made it. She also testified that the police artist's sketch was accurate except that the assailant's face was narrower and his complexion darker than shown in the drawing.

On cross-examination, appellant's counsel established that the police had located a suspect based on the sketch. Attempting to point out the discrepancies between the sketch and his actual physical appearance, counsel then asked, "And the suspect that he found as a result of your description and the artist rendering it, do we have this person in court today?" The answer was in the affirmative.

On redirect examination, the government asked, "In response to the question . . by [appellant's counsel] on cross-examination, [you] stated that the person whose likeness you compiled under the direction of the police artist and the person you identified at the lineup, is the same person in court today?" The answer again was in the affirmative. When government counsel inquired if there was any doubt in her mind about that, appellant's counsel objected, and moved for a mistrial on the ground that this testimony violated the pretrial suppression of any in-court identification. The trial court presumably was aware of the jacket entry which stated that the motion to suppress the in-court identification had been granted, but stated that it was not bound absent a formal written order.[5] The motion for a mistrial was denied. The court itself then proceeded to elicit an in-court identification from the complainant of her assailant and she identified appellant.[6]

(like they had been washed a lot), and possibly tennis shoes.

**5.** It is well settled in this jurisdiction that, "[w]ith respect to motions to suppress, the original ruling thereon becomes the law of the case and is binding on other trial court judges who preside over later phases of the same proceeding (absent significant new facts or a defendant's prior unawareness of grounds for such a motion)." *United States v. Davis,* D.C. App., 330 A.2d 751, 754–55 (1975). *See also Smith v. United States,* D.C.App., 406 A.2d 1262 (1979).

**6.** The court explained its rationale for seeking an in-court identification, stating:

On recross-examination, appellant's counsel sought to impeach complainant's ability to make an accurate identification of her assailant by asking her about Detective McConnell's post-lineup remarks. Counsel was seeking to establish that the policeman's comment that she had chosen the "right man", coupled with the tentative nature of her lineup identification, had irreparably tainted her ability to make an independent in-court identification. The government, however, objected to this line of questioning, arguing that any conversations which occurred after the lineup were beyond the scope of redirect examination. The court sustained the objection and thus cut off defense counsel's line of questioning designed to raise doubts about her in-court identification.

■ Appellant's first assignment of error is that the evidence of the lineup identification should have been suppressed because the lineup was impermissibly suggestive under *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Considering appellant's arguments in light of the record and the photograph of the lineup, we conclude that the motions court did not err when it found that the lineup was not unduly suggestive.

■ The second assignment of error is that complainant was permitted to make an in-court identification of appellant in violation of the pretrial suppression order. It appears from the record, however, that appellant has waived his right to object on this ground.

In the government's case in chief it did not attempt to elicit an in-court identification from the complainant. But on cross-examination appellant's counsel brought about an in-court identification while trying to develop a defense of misidentification, on the premise that complainant's first description of her assailant and the artist's drawing of the suspect differed from appellant's actual appearance. Specifically, counsel was attempting to show through the complainant's testimony that the man arrested and charged was darker than she had said, or as shown in the drawing, and also that his face was not as broad. Consequently, when the witness testified that the officer had told her that he had a suspect fitting the description, appellant's counsel inquired whether the suspect whom the officer found as a result of that description and the artist's drawing was the "person in court today." The witness's answer of "yes" was as much of an in-court identification as if she had been asked to point out her assailant.[7] Counsel then once more elicited testimony that the witness was positive of her lineup identification of the man who had attacked her.

Thereafter on redirect, the government for the first time explored the matter by asking substantially the same question as to whether the person whose likeness had been drawn by the police artist and whom she identified at the lineup was in court. When the prosecutor pursued the matter further by asking if there was any doubt in her mind, defense counsel objected.

It seems clear to us on this record that appellant had opened the door to this line of questioning and cannot now be heard to complain. The damage had occurred before the government asked its question on redirect examination.

The in-court identification that resulted from the government's redirect examination and the trial court's questioning elicit-

---

Well, I'll tell you this, I mean, I don't think a Judge is a dumb ox to sit here. I was going to ask her that question if neither one of you asked it. That's quite the obvious thing. I was going to say, "Well, is it the same one." After all, this is a Court of Justice, in spite of what they have been trying to do to it for years over here.

What I want to know are the facts, without any of these artful dodges that some people think up. But I want to know from the witness, is this the fellow who attacked you, or isn't it[?]

The complainant answered in the affirmative.

7. Since this was a juvenile hearing, presumably no other persons were present in court other than family or those having an official role or a proper interest in the case. *See* D.C.Code 1973, § 16–2316(a); D.C.Code 1978 Supp. § 16–2316(e).

ed no new evidence that had not been brought out already by appellant. *Jenkins v. United States*, D.C.App., 374 A.2d 581, 586 (1977).

Under these circumstances, we hold that since appellant was responsible for the first in-court identification he cannot complain about the second and third which added only minimal prejudice at best.

Almost the identical problem arose in *United States v. Thompson*, 150 U.S.App. D.C. 403, 465 F.2d 583 (1972), where appellant on cross-examination of a police officer elicited inadmissible hearsay testimony and later the prosecution did no more than re-characterize the same evidence. The court held that it was not error to permit the witness to answer the prosecutor's question since the appellant had opened the door.

■ In this case, however, another problem arose when on recross-examination, the court refused to permit inquiry into the witness's possible uncertainty and her ability to make an identification. Counsel proffered that his questions would go to the weight of the identification, whether or not she was positive and whether her identification was aided by police officers. The court sustained the government's objection that any conversation between the witness and the detective after the lineup was over was irrelevant. This ruling was error. *Singletary v. United States*, D.C.App., 383 A.2d 1064 (1978); *Hampton v. United States*, D.C.App., 318 A.2d 598 (1974). In *Singletary* we said at 1073:

> Indeed, the necessity for full cross-examination is particularly acute in the context of a case such as this in which the purpose of the questioning is to demonstrate the lack of reliability or credibility of an identification witness.

and further at 1073:

> In the rare case in which material new matters are brought out on redirect examination, however, the confrontation clause of the Sixth Amendment mandates that the opposing party must be given the right to recross-examination on the new issues—although the privilege of re-cross-examination as to matters *not* cov-

ered on redirect examination remains within the discretion of the trial court. [Emphasis in original; citations omitted.]

In *Hampton v. United States*, D.C.App., 318 A.2d 598 (1974), we observed at 601 that

> [t]here is some degree of suggestiveness when a police officer indicates to a witness that a suspect's picture is among the photographs in the array. Thus, an impeachment on this point is a relevant factor to be considered by the jury in judging the weight to be given the photographic identification—particularly where, as in this case, there is a sole eyewitness. [Footnote omitted.]

Those observations are relevant to our consideration. The line of questioning raised the issue of whether the in-court identification was prompted to any extent by the officer's post-lineup remarks. It might have explained the discrepancy in the complainant's testimony at trial that she was positive, whereas she had said after the lineup that she was not certain.

■ This is not to say that cross-examination can never be curtailed; indeed "it is subject to reasonable regulation by the court in the interest of an orderly and expeditious trial." *Rogers v. United States*, D.C.Mun.App., 174 A.2d 356, 358 (1961). Thus in *Springer v. United States*, D.C. App., 388 A.2d 846, 854 (1978), we said that

> the trial judge may always limit cross-examination "to preclude repetitive and unduly harassing interrogation," *Davis v. Alaska, supra*, 415 U.S. [308] at 316, 94 S.Ct. [1105] at 1110 [39 L.Ed.2d 347] . . . . [Citations omitted.]

■ Nevertheless, the restriction of cross-examination is a delicate operation, carefully entrusted to the discretion of the trial court. "[T]he permissible scope of cross-examination 'must be limited with the utmost caution and solicitude for the defendant's Sixth Amendment rights . . . this discretionary authority to limit cross-examination comes into play after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment.'" *Id.* 388 A.2d at 855 (citations omitted).

However, in this instance no cross-examination of the complainant was permitted on the question of possible suggestivity and the witness's credibility.

Appellant had the right to attempt to elicit facts as to a possible misidentification having resulted from the complainant's description and the police sketch. Although such questioning incidentally resulted in an in-court identification it does not preclude the appellant from pursuing his Sixth Amendment right on recross-examination to question the witness regarding her in-court identification that had been pursued by the government on redirect examination.

■ The concept of cross-examination is fundamental to our adversary system of justice and is "an essential safeguard of the accuracy and completeness of testimony." McCormick on Evidence § 29 (2d ed.1972). It is "the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).

Applying the *Springer* analysis to the present case, we are compelled to the conclusion that the ruling of the trial court worked to deny appellant his Sixth Amendment right to confrontation. He sought to elicit information which would have tended to show that complainant's recollection of her assailant's appearance was uncertain and that Detective McConnell further clouded her memory with his ill-advised remarks after the lineup. In short, the reliability of the in-court identification might have been called into question. This line of questioning was relevant yet it was cut off *in limine* by the trial court. So complete a deprivation of the right to cross-examination is constitutional error.

We find that the error was prejudicial to appellant's defense. Complainant was the only witness who could connect appellant with the crimes and her testimony was crucial to the government's case. Accordingly, we hold that the denial of appellant's Sixth Amendment right of cross-examination of the complainant on matters relevant to her identification require us to reverse the ad-judication of delinquency and to remand for a new hearing.

*So Ordered.*