**In the Matter of D.L., Appellant.**

**No. 83–959.**

District of Columbia Court of Appeals.

Submitted Jan. 4, 1985.

Decided Jan. 25, 1985.

Ruth Harthoorn, Washington, D.C., appointed by this court, was on the brief for appellant.

Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel,

Charles L. Reischel, Deputy Corp. Counsel, and Michele Giuliani, Asst. Corp. Counsel, Washington, D.C., were on the brief for appellee.

Before PRYOR, Chief Judge, and MACK and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant, a juvenile, was adjudicated delinquent after a trial on charges of second-degree burglary and first-degree theft, in violation of D.C.Code §§ 22–1801(b) (1981) and 22–3812(a) (1984 Supp.), respectively. His principal contention on appeal is that the trial court erred in denying his motion to suppress a statement he made to the police. We find no error and affirm the judgment of delinquency.

I

Appellant, a thirteen-year-old boy, was arrested at the home of a friend for a burglary that had taken place about three weeks earlier.[1] After being orally advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he was taken to the police station. There the arresting officer, Detective Esther Dimery, read him his rights again from a "rights card," Form PD–47. She then handed him the card, which also contained four questions calling for yes-or-no answers. He wrote "no" after two of them, indicating that he did not wish to be questioned about the burglary without an attorney present.

Detective Dimery testified at the suppression hearing that at that point she refrained from asking appellant about the burglary because he had made it clear that he did not want to say anything about it. Instead, Dimery began processing the other two suspects who had been arrested along with appellant. About an hour later, the sister of one of the other suspects told Detective Dimery that she had just been talking with appellant, that he now wanted to discuss the case, and that the other two suspects "were not involved." Detective Dimery then asked appellant if he wanted to talk to her; when he said that he did, she readvised him of his *Miranda* rights and gave him another PD–47 to fill out. This time he answered all the questions affirmatively, indicating that he was willing to talk to the police. Dimery spoke with him for a while, then took a written statement from him. The printed form on which the statement was typed again advised appellant of his rights. In the written statement he confessed that he and two others had gone to the burglarized house, and that he had waited outside as a lookout while his companions went inside and stole the complainant's property. Afterwards the three of them went to a park and divided the loot.

Appellant's testimony differed significantly from that of Detective Dimery. He said that after he first refused to answer any questions without having his lawyer present, he was left alone for about fifteen minutes. Then he started talking to the detective, and she told him that "if [he] signed that card it would look better in front of the judge's eyes when [he went] to court." Dimery also told him, he said, that if in fact he did not go into the burglarized house, he could not be charged with burglary but only with receiving stolen property. When the court questioned the relevancy of this testimony, defense counsel asserted that it went "to the issue of coercion and trickery and artifice." Appellant then recounted a few more details of his conversation with Detective Dimery about the difference between burglary and receiving stolen property. After that conversation, he testified, and because the detective had told him that he might not be incarcerated if he were charged only with receiving stolen property, he agreed to sign the second PD–47 and make a statement.

---

1. Despite his tender years, the record reflects that appellant had twice before been adjudicated delinquent, once for robbery and once for larceny. He was on probation for the latter offense when he was arrested in this case.

██ Defense counsel made two arguments in support of the motion to suppress. First, she maintained that appellant had not knowingly and intentionally waived his *Miranda* rights; second, she argued that the statement itself was not voluntary because appellant's will was overborne by the coercive effect of what Detective Dimery allegedly told him before he signed the second PD–47. *See United States v. Blocker*, 354 F.Supp. 1195, 1201 (D.D.C. 1973) ("A promise of leniency or threat of additional prosecution is a recognized form of psychological coercion ..." (footnote omitted)). The same arguments are renewed on appeal. The trial court, however, credited the testimony of Detective Dimery and specifically found that appellant signed the second PD–47, waiving his rights, "before any conversation ... [and] without being under coercion, compulsion." Since there was ample evidence, in the form of Detective Dimery's testimony, to support this finding, we are bound to accept it. D.C.Code § 17–305(a) (1981); *see, e.g., United States v. Lyon*, 348 A.2d 297, 299 (D.C.1975). Inherent in this finding is the further finding that the conversation about which appellant testified, concerning the difference between burglary and receiving stolen property and whether he would have to be incarcerated, never took place. Thus there is no factual support for appellant's legal argument that the statement was inadmissible. Accordingly, we hold that the trial court did not err in denying the motion to suppress. *In re W.B.W.*, 397 A.2d 143, 145–146 (D.C.1979).

## II

██ A few weeks after the suppression hearing, appellant went to trial before another judge. At trial his counsel urged the judge to reconsider the pre-trial ruling on the motion to suppress, but he declined to do so, holding instead that the earlier ruling was the law of the case. The trial judge did agree to hear any additional argument that had not been presented to the motions judge, "or any additional evidence that may have come to counsel's attention ... if there would be something that would change some circumstances and would dictate a change in the ruling of the Court previously made...." Appellant, however, had nothing further to offer. He now contends that the trial judge erred in accepting the ruling of the motions judge as the law of the case.

██ The trial judge was clearly correct. *Jenkins v. United States*, 284 A.2d 460 (D.C.1971); *accord, In re W.A.F.*, 407 A.2d 1062, 1064 n. 5 (D.C.1979); *Rushing v. United States*, 381 A.2d 252, 257 (D.C. 1977); *see Smith v. United States*, 406 A.2d 1262 (D.C.1979). There is no exception to the law-of-the-case rule for juvenile cases; on the contrary, as the government points out in its brief, "both the need for judicial economy and the need to protect the government's right to appeal adverse pre-trial suppression rulings [2] require that the law of the case doctrine apply in juvenile as well as adult proceedings." If the trial court had acceded to appellant's wishes and reconsidered the motion without some additional showing by the defense, it would have committed reversible error. *United States v. Allen*, 337 A.2d 512 (D.C.1975).

██ Nothing in Super.Ct.Juv.R. 111 requires a different result. That rule, which is designed to protect a juvenile's privilege against self-incrimination, provides in pertinent part:

Unless advised by counsel, or *unless the judge is satisfied that the statement was made voluntarily and after knowing waiver of rights*, the statement of the child made while in custody to police or law enforcement officers shall not be used against the child as part of the government's case in chief in a delinquency [proceeding]....

**2.** *See District of Columbia v. M.E.H.*, 312 A.2d 561, 563–564 (D.C.1973) (en banc); D.C.Code

§ 23–104(a) (1981).

[Emphasis added.] Appellant contends, in essence, that the italicized language requires the trial judge in a delinquency proceeding to determine the voluntariness of a juvenile's statement, regardless of any pretrial ruling on that issue by another judge. We do not read the rule so restrictively. In light of *Jenkins, Allen,* and similar cases, we hold that "the judge" to whom this portion of the rule refers may be any judge before whom the issue of voluntariness arises. In the context of this case, that is the motions judge, not the trial judge.

*Affirmed.*